## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

SUSAN RAE VILLAR                                        CIVIL ACTION


VERSUS                                                  NO. 14-562-JWD-RLB


CAROLYN W. COLVIN,
ACTING COMMISSIONER
OF THE SOCIAL SECURITY
ADMINISTRATION


### NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report.  A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**


Signed in Baton Rouge, Louisiana, on October 8, 2015.


_____
    **RICHARD L. BOURGEOIS, JR.**
    **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SUSAN RAE VILLAR                                         CIVIL ACTION

VERSUS                                                   NO. 14-562-JWD-RLB

CAROLYN W. COLVIN,
ACTING COMMISSIONER
OF THE SOCIAL SECURITY
ADMINISTRATION

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff, Susan Rae Villar (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security Act. (R. Doc. 1).  Having found all of the procedural prerequisites met (Tr. 471-73); the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . .").  For the reasons given below, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

I.      PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on May 14, 2007, alleging that she became disabled on February 10, 2007. (Tr. 106-08).  Relevant here, that application was eventually denied by an Administrative Law Judge, who first held an administrative hearing

(Tr. 578-97) before issuing an unfavorable decision on August 15, 2012. (Tr. 561-72).  Plaintiff's

request for review of the ALJ's decision was denied by the Appeals Council on August 1, 2014.

(Tr. 471-73).  The ALJ's decision rested as the Commissioner's final decision when the Appeals

Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II.     STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether

there is substantial evidence to support the findings of the Commissioner and whether the correct

legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401

(1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019,

1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It

means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*,

305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor

Relations Act, 29 U.S.C. § 160(e)).  The Fifth Circuit has further held that substantial evidence

"must do more than create a suspicion of the existence of the fact to be established, but no

substantial evidence will be found only where there is a conspicuous absence of credible choices

or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)

(quotations omitted).  Conflicts in the evidence are for the Commissioner "and not the courts to

resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the

evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even

if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.,*

*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is

less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th

Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000).  If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.    ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520(a)(4).  The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability.  If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process).  First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c).  At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments).  Fourth, the

claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work.  20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work.  20 C.F.R § 404.1520(g)(1).  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1.    Plaintiff last met the insured status requirements on June 30, 2012.

2.    Plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 10, 2007.

3.    Through June 30, 2012, Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical, thoracic and lumbar spine; diabetes; diabetic peripheral neuropathy; hypertension; coronary artery disease; and obesity.

4.    Through June 30, 2012, her date last insured, Plaintiff's impairments did not meet or medically equal the severity of a listing — specifically, Listing 1.04A (Disorders of the Spine).

5.    During the relevant period, Plaintiff retained the residual functional capacity (RFC) to "perform a wide range of sedentary work . . . but she must stand briefly approximately every hour before returning to the seated position, with no need to leave the work area."

6.    Through June 30, 2012, Plaintiff was capable of performing her past relevant work as an "accounts receivable clerk," as it required the performance of work-related activities consistent with Plaintiff's RFC.

7.    Plaintiff did not meet the Social Security Act's definition of disability "at any time" between her alleged onset date of February 10, 2007 and June 30, 2012, her date last insured.

(Tr. 561-72).

## IV.   DISCUSSION

On appeal, Plaintiff only raises one assignment of error. (R. Doc. 7 at 7-14).  Specifically, Plaintiff contends that the ALJ "erred in rejecting the opinion evidence from the plaintiff's long term treating physicians," Dr. Alpesh Patel and Dr. John Knapp. (R. Doc. 7 at 7).  According to Plaintiff, the ALJ "clearly over-stepped his limit as a lay examiner, and substituted his own medical indicia for that of the treating and expert sources." (R. Doc. 7 at 11).

Generally, the "opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also* 20 C.F.R. § 404.1527(c)(1) (examining physician opinion given more weight than non-examining physician).[1]  The ALJ, however, may reject the treating source's opinion when "'there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another.'" *Walker v. Barnhart*, 158 F. App'x 534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458).  Thus, the ALJ's decision to reject a treating specialist's opinion must be supported by substantial, contradictory, first-hand evidence from another physician.  If the decision is so supported, the decision should be upheld as "the ALJ is responsible for resolving conflicts in the evidence, and we will not substitute our judgment for his." *Cain v. Barnhart*, 193 F. App'x 357, 360 (5th Cir. 2006) (citing *Newton*, 209 F.3d at 452, 458; *Walker*, 158 F. App'x at 534).  In summary, the ALJ is free to discredit the opinion of a treating physician when it is contradicted by the evidence found in the record. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (ALJ may reject a treating physician's opinion in favor of an examining physician where the evidence supports a contrary conclusion).

---

[1] "Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton*, 209 F.3d at 453.

Dr. John Knapp provided 5 medical source statements between April 16, 2007 and July 10, 2013. (Tr. 245, 515, 519, 520-22, 526).  Only the medical source statement dated April 16, 2007 relates to the relevant period, which states:

> [Plaintiff] is a 37-year old Caucasian female with numerous medical problems including severe lumbar disc disease, failed back syndrome, cervical disc disease, diabetes, hypertension and hyperlipidemia. Patient is on chronic narcotic pain medicine because of failure of aggressive therapy of her back pain. Because of her constant monitoring of her medication plus frequent doctor's visits plus the fact that she is unable to drive due to her medication, it is my opinion that the patient is permanently disabled and unable to perform any gainful employment.

(Tr. 245).  After acknowledging the limitations assessed by Dr. Knapp on April 16, 2007, as well as Dr. Knapp's "long-standing treatment relationship," the ALJ found that his "opinion is not supported by the evidence." (Tr. 567-68).

First, the ALJ found that Dr. Knapp's April 16, 2007 opinion was inconsistent with his own treatments records, which did not indicate that Plaintiff has "been so inactive as to suggest the complete inability to work." (Tr. 568).  For example, "[o]n April 13, 2007, just three days before" providing his April 16, 2007 opinion, Dr. Knapp objectively reported full range of motion in Plaintiff's back and extremities, normal sensation, normal strength and normal gait. (Tr. 254).  Plaintiff's next appointment with Dr. Knapp did not take place until August of 2007, which is inconsistent with Dr. Knapp's statement that Plaintiff's "frequent doctor's visits" prevented her from working. (Tr. 245, 251-53).  At Plaintiff's August 2007 appointments, Dr. Knapp consistently observed full range of motion in Plaintiff's back and extremities, normal sensory, normal strength and normal gait. (Tr. 251, 252, 253). Plaintiff also exhibited "Well Dev[eloped]" muscle tone. (Tr. 252, 253).

Dr. Knapp similarly observed well developed muscle tone, full range of motion, normal sensation, normal strength and normal gait in February of 2007. (Tr. 256, 257). On March 19,

2007, Plaintiff likewise exhibited full range of motion in her back and extremities, as well as, normal gait. (Tr. 255).  As the ALJ observed at step 3 of the evaluation (Tr. 566), Dr. Knapp continued to observe normal strength, sensation and range of motion throughout the relevant period. (Tr. 249, 395) (January 2008); (Tr. 247) (February 2008); (Tr. 393) (May 2008); (Tr. 434, 435) (December 2008); (Tr. 428) (July 2009); (Tr. 754, 870) (November 2009); (Tr. 720, 721, 722, 863, 865, 866, 867, 869) (March 2010); (Tr. 718, 748) (May 2010); (Tr. 861) (June 2010); (Tr. 859) (August 2010); (Tr. 858) (September 2010); (Tr. 856) (November 2010); (Tr. 854) (October 2011); (Tr. 853) (November 2011); (Tr. 852) (January 2012).

The objective findings reported by Dr. Knapp between 2007 and 2012 provide substantial evidence supporting the ALJ's rejection of Dr. Knapp's April 16, 2007 opinion concerning Plaintiff's physical limitations, as inconsistent with his own treatment records. (Tr. 568).

Second, the ALJ rejected Dr. Knapp's opinion because "the other evidence in the file fail[s] to support the opinion." (Tr. 568).  Specifically, the ALJ found that Plaintiff's "daily activities, as described in [her Function Report] and at the hearing, suggest the ability to perform the very thing that Dr. Knapp stated she could not." (Tr. 568).  Specifically, Dr. Knapp opined in April of 2007 that Plaintiff could not work because her medications rendered her "unable to drive." (Tr. 245).  By contrast, Plaintiff reported in June of 2007 that she could drive and that she drove a car "to get around." (Tr. 142).  Her daily activities consistently included driving her son to football practice and driving her children to school. (Tr. 139).  As the ALJ observed, Plaintiff went "so far as to describe herself as her children's 'taxi service.'" (Tr. 568); (Tr. 140) ("taxi service").  Given the clear inconsistencies between Plaintiff's own testimony and Dr. Knapp's statement that Plaintiff was unable to work because her medications rendered her unable to drive, the ALJ's rejection of his opinion is supported by substantial evidence. (Tr. 568).

Dr. Patel provided three separate medical source statements, dated November 25, 2008

(Tr. 421), December 12, 2008 (Tr. 424), and July 10, 2012 (Tr. 972-74).  On November 25,

2008, Dr. Patel explained, in relevant part:

> [Plaintiff's] level of pain interferes with daily living activities to include caring
> for her children and maintaining her home. She is treated with potent narcotic
> analgesics, side effect[s] include extreme drowsiness. . . . The combination of
> [Plaintiff's] pain and medication side effects makes her, in my opinion, an
> unlikely candidate for returning to work. She cannot maintain any position, be it
> sitting, standing, or walking for longer than 15 minutes at a time. I cannot imagine
> her functioning as a reliable employee in any competitive work setting.

(Tr. 421).  Less than 3 weeks later on December 12, 2008, Dr. Patel similarly stated:

> . . . In sum, [Plaintiff] has cervical, thoracic and lumbar spondylosis with both
> cervical and lumbar radiculopathy.  Treatment has consisted of potent oral pain
> relievers . . . . Clinically, she exhibits positive straight leg raise and sensory deficit
> in the L5-S1 distribution. Other findings have included difficulty with heel to toe
> walking. She also has facet joint dysfunction provocation via back extension,
> lateral flexion and rotation. This patient is going to be limited in her ability to sit,
> stand, as well as walk; needing to alternate positions with periodic rests in the
> supine position. Considering this and medication side effects, I do not believe that
> she could perform any type of work on a regular basis as her symptoms would
> result in excessive absenteeism.

(Tr. 424).  In his last medical source statement on July 10, 2012, Dr. Patel similarly opined that

Plaintiff could not lift more than 10 pounds and could not stand, walk or sit for longer than 15 to

20 minutes at a time. (Tr. 972).  Dr. Patel additionally suggested that Plaintiff's lumbar

radiculopathy and lumbar stenosis would require her to "periodically" elevate one or both lower

extremities throughout the day using a footstool. (Tr. 972-73).  Dr. Patel also found Plaintiff was

limited to occasional gross and fine manipulation with her upper extremities. (Tr. 973-74). The

narrative portion of the statement went on to explain:

> [Plaintiff's] pain level[] interfere[s] with her activity of daily living and is being
> treated with potent narcotic analgesics. Side effects can include extreme
> drowsiness which would affect her ability to work/concentrate. Imaging studies . .
> . show[] disc bulging . . . and degenerative changes . . . . Due to all of the above,

she is unable to return to work and cannot maintain any position (standing, walking or sitting) for greater than 15 minutes at a time.

(Tr. 974).

The ALJ rejected the opinion of Dr. Patel, explaining: "As with Dr. Knapp's opinion, a close review of Dr. Patel's own records and the totality of the evidence reveal a lack of support for the physician's reports of extreme limitations." (Tr. 569). Concerning Dr. Patel's statement that Plaintiff could not work because her medications caused "extreme drowsiness," the ALJ observed that Dr. Patel contemporaneously and consistently recorded "the absence of side effects" throughout the time period on which his opinion is based. (Tr. 569). The record contains substantial evidence to support this finding; (Tr. 235) (Plaintiff reported "no significant side effects" in 2007); (Tr. 237, 240, 403, 404, 406, 409, 464) (documentation that Plaintiff reported no medication side effects throughout 2008); (Tr. 457, 460, 463, 737-38, 739-40, 961, 963, 965, 967, 969) (same in 2009); (Tr. 729, 731, 734-35, 928, 934, 937, 942, 947, 949, 954, 957, 959) (same in 2010); (Tr. 901, 913, 922, 924, 925) (same in 2011); (Tr. 872, 874, 886, 888) (same in 2012).

The ALJ additionally discredited Dr. Patel's "remaining limitations," including Plaintiff's need to alternate positions every 15 minutes, elevate her legs, and periodically rest, because these findings were likewise inconsistent with his treatment notes. (Tr. 569-70). Specifically, Dr. Patel's records indicate that Plaintiff's pain was well-controlled by her medications. (Tr. 874, 888, 901, 913, 922). Moreover, Dr. Patel reported an increase in Plaintiff's activity level and improvement in her ability to complete activities of daily living. (Tr. 725, 874, 876, 880, 886, 888, 891, 895, 911, 913, 922, 924, 968). And while Dr. Patel opined that Plaintiff's impairments severely restricted her physical abilities, he encouraged her to maintain a "home exercise program" and "[c]ounseled" Plaintiff to "increase" her level of "activity" throughout 2011 and

2012. (Tr. 725, 874, 878, 882, 893, 897, 901, 905, 913); (Tr. 888) ("I recommended to do aerobic exercise.").

As Plaintiff points out, Dr. Patel's treatment records do report findings of positive straight leg raising tests. Over the relevant 5-year period, the record contains five instances of positive straight leg raise testing between 2007 and 2008 (Tr. 229, 231, 235, 237, 240), one instance in 2010 (Tr. 938), and another in 2011 (Tr. 922).  The ALJ readily acknowledged these findings. (Tr. 570) ("Despite many normal findings, Dr. Patel's notes document occasional positive straight leg raise tests. . . .").  However, the ALJ was "not persuaded that the reported positive straight leg raises, in the absence of other physical findings, leave the claimant unable to sit, stand or walk more than fifteen minutes at a time." (Tr. 570).  Based on the Court's review, substantial evidence is found in the record to support the ALJ's finding.

For example, Dr. Patel's physical examinations of Plaintiff over the five-year period consistently found normal gait, normal reflexes, and no significant motor or sensory deficit. (Tr. 229, 231, 233, 235, 456, 463, 725, 729, 731, 873-74, 887, 900, 912, 921, 924, 928, 931, 933, 946, 950, 955, 958, 960, 962, 968) (records either indicate that no significant motor deficit was found or that motor was intact); (Tr. 229, 231, 233, 235, 456, 463, 873-74, 887, 900, 912, 921, 924, 928, 955, 962, 968); (no significant sensory deficit); (Tr. 233, 235, 237, 406, 463, 874, 888, 912, 922, 928, 955) (normal reflexes); (Tr. 456, 458, 725, 729, 734-35, 737-38, 739-40, 873) (gait within normal limits or steady).  Dr. Patel also observed intact strength and good muscle tone in the lower extremities (Tr. 229, 873, 887, 900, 912, 921).  Consistent with these findings are Dr. Knapp's previously mentioned observations of normal strength, sensation and range of motion throughout the relevant period.  Consultative examiner, Dr. Adeboye Francis, similarly

found no sign atrophy, normal muscle tone, normal strength and normal range of motion in all joints, despite positive straight leg raises, upon examining Plaintiff. (Tr. 183).

Finally, the ALJ rejected Dr. Patel's opinion because he found limitations that were inconsistent with Plaintiff's daily activities. (Tr. 570-71).  In particular, Plaintiff testified that "she does her own basic household chores, including mopping, sweeping, doing laundry cooking." (Tr. 570); (Tr. 587) ("I do, you know, basic house chores. . . . Mopping and you know, sweeping. And you know, I try and prepare our meals."); (Tr. 586) (Plaintiff does laundry and cooks meals).  Plaintiff also assists her 13 year-old son with his homework after school and spends an hour of her day reading for pleasure. (Tr. 592).  The ALJ properly relied on this evidence to discredit the limitations opined by Dr. Patel.

In reviewing the record evidence, the ALJ provided a detailed, thorough and exhaustive analysis of the medical and opinion evidence.  While there are findings indicating that Plaintiff suffers from limitations, these findings are not inconsistent with an RFC for sedentary work with the ability to alternate positions hourly. (Tr. 566).  For the reasons discussed above, the Court finds substantial evidence supports the ALJ's rejection of Dr. Knapp's opinion, as well as the ALJ's rejection of Dr. Patel's opinion.  Because Plaintiff has not raised any other arguments in support of her appeal, her claim must be dismissed.

**V.    CONCLUSION**

For the reasons given above, the Court **RECOMMENDS** that the Commissioner's decision be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on October 8, 2015.

_____

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**